O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| MARIANO AGUIRRE, JR.,<br><br>    Plaintiff,<br><br>  v.<br><br>BW PACKAGING SYSTEMS, INC. et al.,<br><br>    Defendants. | Case № 2:22-cv-04980-ODW (GJSx)<br><br>**ORDER GRANTING MOTION TO REMAND [12]; AND**<br><br>**ORDER DENYING MOTION TO DISMISS [30]** |

## I. INTRODUCTION

On October 7, 2021, Plaintiff Mariano Aguirre, Jr. filed this putative class action in the Superior Court of California, County of Los Angeles against Defendants BW Packing Systems, Inc.; Barry-Wehmiller Group, Inc. ("BW Group"); Barry-Wehmiller Companies, Inc.; Barry-Wehmiller Design Group, Inc.; and Thiele Technologies, LLC. (Notice of Removal ("NOR") ¶ 1, ECF No. 1.) On July 20, 2022, BW Group removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (*Id.* ¶¶ 12–66.) Aguirre now moves to remand the action for lack of subject matter jurisdiction. (Mot. Remand ("Motion" or "Mot."), ECF No. 12.) For the reasons discussed below, the Court finds that BW Group fails to establish by a preponderance of the evidence that the amount in

controversy exceeds $5 million. Accordingly, the Court **GRANTS** Aguirre's Motion and **REMANDS** the case.[1]

## II. BACKGROUND

Aguirre brings this class action individually and on behalf of a putative class of all current and former hourly, non-exempt employees whom Defendants employed in California at any time during the applicable limitations period. (NOR Ex. B (First Amended Complaint ("FAC")) ¶ 27, ECF No. 1-2.) Aguirre asserts nine causes of action against Defendants, all arising from the wage-and-hour provisions of the California Labor Code: (1) failure to pay minimum wages; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages at termination ("waiting time penalties"); (7) failure to provide accurate wage statements; (8) unfair competition, and (9) civil penalties under the California Private Attorneys General Act. (*Id*. ¶¶ 34–107.) The minimum wage and overtime compensation claims (and the claims that derive from these two claims) are based on Defendants' practice of requiring its employees to (1) undergo a COVID screening before clocking into work and wait in a line to undergo this screening, all without compensation; (2) attend pre-shift meetings with supervisors before clocking into work; and (3) prepare machines before clocking into work. (*Id.* ¶ 17.)

The meal and rest break claims (and their derivative claims), unlike the minimum wage and overtime claims, are not tethered to any case-specific factual allegations. (*See id.* ¶¶ 18–19.) Aguirre alleges these claims in general terms and indicates that Defendants "sometimes, but not always," failed to provide Aguirre and the putative class members with a meal break or a rest break or the associated meal or rest break premium. (*Id.*) Aguirre does not expressly allege the specific amounts of

---

[1] Having carefully considered the papers in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1  any damages incurred in connection with any cause of action, either individually or on
2  a classwide basis.  (*See generally* FAC.)

   Shortly after Aguirre filed the operative First Amended Complaint in state court, BW Group removed the case to federal court, alleging this Court's subject matter jurisdiction pursuant to CAFA.  (*See* NOR.)  In the Notice of Removal, BW Group values the amount in controversy for each of Aguirre's claims as follows:

| <u>Claim</u> | <u>Amount</u> | <u>Citation</u> |
|---|---|---|
| Overtime Wages | $1,400,186.60 | (NOR ¶¶ 29, 64.) |
| Meal Periods | $933,457.73 | (NOR ¶ 36.) |
| Rest Periods | $933,457.73 | (NOR ¶ 43.) |
| Waiting Time Penalties | $662,088.19 | (NOR ¶ 52.) |
| Wage Statements | $454,500 | (NOR ¶ 57.) |
| Attorneys' Fees (*25% of above total*) | $1,095,922.56 | (NOR ¶ 63.) |
| **TOTAL:** | **$5,479,612.81** | (NOR ¶ 64.) |

Aguirre now moves to remand, arguing that BW Group (1) fails to establish that at least $5,000,000 is in controversy as required for subject matter jurisdiction under CAFA, and (2) failed to timely remove the case.  (Mot. 2.)  BW Group opposes the Motion, arguing that (1) its amount-in-controversy calculations are based on evidence and reasonable assumptions, and (2) it timely removed.  (*See* Opp'n, ECF No. 17.)

### III.   LEGAL STANDARD

CAFA provides federal courts with jurisdiction over a purported class action if all of the following requirements are met: (1) the amount in controversy exceeds $5 million, (2) at least one putative class member is a citizen of a state different from any defendant, and (3) the putative class exceeds 100 members.  28 U.S.C. §§ 1332(d)(2), (5).  The removing defendant bears the burden of establishing federal jurisdiction, "including any applicable amount in controversy requirement."  *Abrego*

*Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). However, unlike cases removed under diversity jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," when the allegation is challenged, "[e]vidence establishing the amount is required." *Id.* "[B]oth sides submit proof," and the court decides whether the defendant has demonstrated, by a preponderance of the evidence, that the amount in controversy requirement has been satisfied. *Id.* at 88. Such evidence may include "affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Whether the defendant meets its burden of demonstrating the amount in controversy is "to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "[M]ere speculation and conjecture, with unreasonable assumptions" does not suffice. *Id.* at 1197.

## IV. DISCUSSION

The Court first considers whether BW Group demonstrates that over $5 million is in controversy as required by CAFA. Because BW Group fails in this burden, the Court remands the action without considering Aguirre's timeliness arguments.

"In determining the amount in controversy, courts first look to the complaint." *Id,* Here, Aguirre does not allege that either he or the class incurred any specific amounts of damages. (*See generally* FAC.) When federal jurisdiction is challenged and the amount of damages is not evident from the face of the complaint, "the defendant seeking removal bears the burden to show by a preponderance of the

evidence that the aggregate amount in controversy exceeds $5 million." *Id.* (citing *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013)).

"California law requires employers to provide daily meal and rest breaks to most unsalaried employees." *Naranjo v. Spectrum Sec. Servs.*, 13 Cal. 5th 93, 101 (2022). "If an employer unlawfully makes an employee work during all or part of a meal or rest period, the employer must pay the employee an additional hour of pay." *Id.* Thus, the amount placed in controversy by a putative class-action meal or rest break claim is generally calculated by multiplying together (1) the total classwide number of at-issue work weeks; (2) the number of required meal or rest breaks per work week per employee; (3) the "violation rate," that is, by the percentage of meal or rest breaks the employer failed to provide; and (4) the average hourly pay rate across the putative class. (*See, e.g.*, NOR ¶ 36 (calculating amount placed in controversy by meal break claim by multiplying 35,669 (number of at-issue work weeks) by 5 (number of required meal breaks per work week) by 20% (assumed violation rate) by $26.17 (average hourly rate across the putative class)).)

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the $5,000,001 amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, No. 19-cv-5430-GW (JPRx), 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019). Here, BW Group's calculations of the amount placed in controversy by Aguirre's meal and rest break claims do not assist BW Group in its burden because the claimed violation rates are arbitrary. In particular, BW Group bases its meal and rest break calculations on a 20% violation rate for each claim, or one meal break violation and one rest break violation per week for a typical full-time employee. (NOR ¶¶ 35, 42.) But BW Group errs in effectively assuming a uniform rate of one violation per week for the meal and rest break claims. The absence of any case-specific facts or allegations regarding the meal and rest break claims makes BW Group's violation rate assumption an arbitrary one, such that BW Group's argument

"amounts to little more than plucking a violation rate out of the air and calling it reasonable." *Gonzalez v. H&M Hennes Mauritz L.P.*, No. 8:21-cv-01611-JLS (JDE), 2022 WL 179292, at *4 (C.D. Cal. Jan. 20, 2022) (internal quotation marks omitted) (quoting *Toribio*, 2019 WL 4254935, at *3).

BW Group's citation to *Brumbach v. Hyatt Corp*, No. 20-cv-2231-WQH-KSC, 2021 WL 926692 (S.D. Cal. Mar. 11, 2021), does not change this conclusion. (Opp'n 5.) In *Brumbach*, the plaintiff alleged that "[a]s a matter of Defendants' established company policy, Defendants failed to always authorize and permit all required rest periods." 2021 WL 926692, at *7 (alteration in original). Here, by contrast, Aguirre appears to foreclose the idea that Defendants' violations arose from a system-wide policy, by alleging that Defendants "sometimes, but not always" failed to provide meal or rest breaks. (FAC ¶¶ 18–19.) Whereas allegations of a companywide policy might support the assumption that each employee was denied one meal break and one rest break per week, allegations that an employer "sometimes, but not always" failed to provide breaks does not support the same assumption.

Without the benefit of any details about the nature of the violations, BW Group's meal and rest break calculations are, as one court put it, little more than a "routine . . . exercise in mathematical fantasyland." *Toribio*, 2019 WL 4254935, at *3; *see Ryan v. Mission Treatment Servs.*, No. 2:22-cv-04013-ODW (MARx), 2022 WL 4331093, at *3 (C.D. Cal. Sept. 19, 2022) (discussing cases that "demonstrate that the number of unpaid hours per week is highly dependent on the facts and circumstances of each individual case"). Here, absent any case-specific allegations or evidence, the Court has no way of knowing whether *any* average number of missed meal or rest breaks (or premiums) per week—0.5, 1, 5, or more, or less—is a reasonable assumption. BW Group, for its part, presents no evidence that might provide factual contours to the meal and rest break claims to support its claimed violation rates. (*See* NOR ¶¶ 31–44; Opp'n 2–6.) Accordingly, BW Group fails in its

burden of demonstrating the amount placed in controversy by the meal and rest break claims.

While some other courts have attempted to fix violation rates in the face of a vague, mostly boilerplate pleading such as Aguirre's, this Court respectfully diverges from that approach and instead follows the approach described by the court in *Toribio*, which observed that, when "[f]aced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court . . . with respect to what the Complaint's allegations actually mean with respect to violation rates." *Toribio*, 2019 WL 4254935, at *3. This Court agrees that this route is the more sensible. BW Group is free to conduct discovery in state court to uncover the case-specific factual basis of Aguirre's claims and, armed with this information, BW Group can then take appropriate action.

This conclusion is fatal to BW Group's opposition to remand, even if the Court assumes the truth of the remainder of BW Group's assumptions and contentions. Without meaningful proof of the amount placed in controversy by the meal and rest break claims, the amount BW Group preponderantly demonstrates to be in controversy is $1,400,186.60 (overtime) + $662,088.19 (waiting time) + $454,500 (wage statements) = $2,516,774.79, plus 25% of that amount for attorneys' fees, for a total of $3,145,968.49. This is well below the threshold BW Group must cross to demonstrate CAFA jurisdiction. Accordingly, the Court lacks subject matter jurisdiction and must remand the case.[2]

---

[2] Even if the Court were not to "zero-out" the meal and rest break claim values and instead filled in the gaps with its own reasonable assumptions, the demonstrated amount in controversy would still fall short of the required threshold. As discussed, Aguirre alleges that Defendants "sometimes, but not always" failed to provide meal or rest breaks. While a certain minimum number of violations are implied by the definition of "sometimes," the Court does not find that once-a-week is a reasonable assumption based on Plaintiff's generalized allegation. Yet even considering a more forgiving violation rate of one meal break and one rest break per month, or 5%, the demonstrated amount in controversy totals only $3,729,379.56, still well below the jurisdictional threshold.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Aguirre's Motion, (ECF No. 12), and **REMANDS** this case to the Superior Court of California for the County of Los Angeles, 111 North Hill Street, Los Angeles, California 90012, Case No. 21STCV39617.  Defendants' pending Motion to Dismiss is **DENIED AS MOOT**. (ECF No. 30.)  All dates and deadlines are **VACATED**.  The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

March 22, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**